IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CASCADIA WILDLANDS, OREGON                Case No. 6:12-cv-00095-AA
WILD, and BENTON FOREST                        OPINION AND ORDER
COALITION,

       Plaintiffs,

   v.

BUREAU OF LAND MANAGEMENT,
an administrative agency of
the United States Department
of Interior,

       Defendant,

   v.

FRERES LUMBER COMPANY, INC.,
an Oregon corporation,

       Defendant-
       Intervenor.

_____

Nicholas S. Cady
Cascadia Wildlands
P.O. Box 10455
Eugene, Oregon 97440

Peter M.K. Frost
John R. Mellgren
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
    Attorneys for plaintiffs

Page 1 - OPINION AND ORDER

Robert G. Dreher
Acting Assistant Attorney General
Brian M. Collins
U.S. Department of Justice
Environmental and Natural Resources Division
601 D. Street N.W.
Washington, District of Columbia 20004

S. Amanda Marshall
United States Attorney
Stephen J. Odell
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
    Attorneys for defendant

Scott W. Horngren
American Forest Resource Council
5100 S.W. Macadam, Suite 350
Portland, Oregon 97239
    Attorney for defendant-intervenor

AIKEN, Chief Judge:

    Plaintiffs Cascadia Wildlands, Oregon Wild, and the Benton Forest Coalition move for attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, after prevailing on one of their claims against defendant the Bureau of Land Management ("BLM"). The BLM opposes plaintiffs' motion on the basis that its position was substantially justified; alternatively, the BLM asserts that plaintiffs' request for fees is unreasonable and not supported by the relief obtained. For the reasons set forth below, plaintiffs' motion is granted in part, in that attorney fees are awarded in the reduced sum of $75,035, and costs are awarded in full in the amount of $1,042.05.

## BACKGROUND

    The history of this matter is well known to the parties. It will therefore only be repeated to the extent necessary to provide

Page 2 - OPINION AND ORDER

context for the present motion.

In relevant part, The Alsea River Watershed Restoration project authorized commercial thinning on public lands, resulting in the North Fork Overlook ("Overlook Project") timber sale. The Overlook Project consisted of four forest stands, designated as 17A, 17B, 17C, and 19A. On January 18, 2011, after exhausting their administrative remedies, plaintiffs filed a complaint in this Court, alleging that the 2010 environmental assessment ("EA"), approving the Overlook Project and confirming that it complied with the applicable land-use plans, violated the Federal Land Policy and Management Act ("FLPMA") and the National Environmental Policy Act ("NEPA") because it failed to analyze whether the proposed thinning would harm the red tree vole in stands 17A and 17B.

On August 10, 2012, plaintiffs moved for summary judgment. On August 30, 2012, defendant-intervenor Freres Lumber Company ("Freres") filed a cross-motion for summary judgment. On August 31, 2012, the BLM filed a cross-motion for summary judgment. On December 21, 2012, this Court granted summary judgment in favor of the BLM and Freres on two of plaintiff's claims; however, the Court ruled in favor of plaintiffs on their final claim, thereby enjoining the BLM from going forward with the Overlook Project until a supplemental EA was conducted in light of significant new information. See generally Cascadia Wildlands v. Bureau of Land Mgmt., 2012 WL 6738275 (D.Or. Dec. 21, 2012).

On September 23, 2013, after the parties engaged in further settlement negotiations and ultimately reached an agreement

Page 3 - OPINION AND ORDER

providing for buffers around certain known vole sites, plaintiffs filed the present motion seeking $99,918.45[1] for legal work performed by Peter Frost, Nicholas Cady, and John Mellgren.

### STANDARD

A party that prevails against the United States government in a civil action is entitled, in certain circumstances, to an award of attorney fees, court costs, and other expenses under the EAJA. See 28 U.S.C. § 2412; see also Wilderness Soc'y v. Babbitt, 5 F.3d 383, 385 (9th Cir. 1993).  In pertinent part, the EAJA provides:

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Thus, the EAJA establishes a two-part test for determining whether an award of attorney fees is appropriate.  The court must first ascertain if the plaintiff was a prevailing party; if so, the court must then evaluate whether the government was substantially justified in its position and that no other special circumstances exist for making an award of attorney fees unjust.  See Thomas v. Peterson, 841 F.2d 332, 335 (9th Cir. 1988); see also  Flores v.

---

[1] Plaintiffs assert that they have incurred approximately $110,000 in compensable fees and costs under the EAJA, but nonetheless revised and reduced their request in response to the BLM's opposition.  See Pls.' Mem. in Supp. of Mot. Att'y Fees 10; Pls.' Reply to Mot. Att'y Fees 5, 10.

Shalala, 49 F.3d 562, 567 (9th Cir. 1995).

## DISCUSSION

It is undisputed that plaintiffs are prevailing parties and therefore satisfy the first requirement for an award of attorney fees under 28 U.S.C. § 2412(d)(1)(A).  See United States v. Real Prop. Known as 22249 Dolorosa St., Woodland Hills, Cal., 190 F.3d 977, 981 (9th Cir. 1999); see also Pls.' Mem. in Supp. of Mot. Att'y Fees 2; Def.'s Resp. to Mot. Att'y Fees 1.  It is also undisputed that no special circumstances are present in this case. See Pls.' Mem. in Supp. of Mot. Att'y Fees 3-4; Def.'s Resp. to Mot. Att'y Fees 1-2.  The BLM argues, however, that plaintiffs' request for fees should be denied because its position was substantially justified.  In the alternative, the BLM objects to the requested hourly rate and amount of hours expended as being unreasonable.

## I.  Substantial Justification

In order to demonstrate substantial justification, the government bears the burden of demonstrating that its conduct had "a reasonable basis in both law and fact."  Pierce v. Underwood, 487 U.S. 552, 565 (1988). As such, the government is substantially justified if its position meets "the traditional reasonableness standard - that is justified in substance or in the main, or to a degree that could satisfy a reasonable person."  Id. (internal quotations omitted).  The government's failure to prevail in the underlying litigation is therefore not dispositive.  Id. at 569 ("the Government could take a position . . . that is substantially

justified, yet lose").

Here, plaintiffs challenged the BLM's 2010 EA in three respects. First, plaintiffs asserted that the BLM violated the FLMPA by failing to conduct a pre-disturbance survey for red tree vole sites in stands 17A and 17B prior to authorizing the Overlook Project. See Pls.' Mem. in Supp. of Mot. Summ. J. 10-12. Plaintiffs also argued that the BLM violated NEPA by neglecting to take the requisite hard look at the project's effects on the vole and by ignoring new information that emerged after the 2010 EA. Id. at 13-17. This Court found that the BLM did not act arbitrarily or capriciously concerning the first two issues; however, the United States Fish and Wildlife Service's ("FWS") "12-Month finding on a Petition to List a Distinct Population Segment of the Red Tree Vole as Endangered or Threatened" ("Finding") constituted significant new information under NEPA. See Cascadia, 2010 WL 6738275 at *3-11.

While not explicit, the BLM contends that its defense of the 2010 EA was substantially justified because its position had a reasonable basis in law and fact; the entirety of the BLM's argument is as follows:

> The 12-Month Finding was issued several months after the North Fork Overlook Project decision, and BLM made a reasoned determined that it contained no new information that was not already reflected in the materials analyzed by the BLM . . . Even though the Court held that BLM should have considered the 12-Month Finding, BLM's position was substantially justified, because that 12-Month Finding supported the BLM's conclusions, and Plaintiffs there are not entitled to an award of fees under EAJA.

Def.'s Resp. to Mot. Att'y Fees 2 (citations omitted). Thus, the

Page 6 - OPINION AND ORDER

BLM's opposition to EAJA fees is premised on the same arguments asserted pursuant to the parties' cross-motions for summary judgment. Compare id., with Def.'s Mem. in Supp. of Cross-Mot. Summ. J. 22-24 ("the 12-Month Finding confirmed BLM's conclusions in the Alsea River EA in some key respects").

The BLM's attempt to reargue the merits of this case is unpersuasive. As this Court previously acknowledged, "NEPA imposes a continuing duty on federal agencies to supplement their analyses to respond to new information." Cascadia, 2012 WL 6738275 at *9 (citations omitted). In analyzing plaintiffs' successful claim, the Court addressed the arguments that the BLM now raises and nonetheless held that it violated NEPA. Id. at *11. In other words, the BLM's contention that the FWS's Finding supported its conclusions is neither supported by precedent nor the evidence of record. Id. ("the survey reveals that the assumptions on which the 2010 EA were premised — namely, that thinning around legacy trees in stands containing red tree voles will not impact the species and that the long-term habitat gains resulting from the proposed action would offset any short-term losses to the vole population — were incorrect") (citation omitted); see also Thangaraja v. Gonzales, 428 F.3d 870, 874-74 (9th Cir. 2005) ("it will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record") (citation and internal quotations omitted).

Accordingly, this Court is "bound by [its previous] holding

and rationale," and cannot diverge therefrom in deciding plaintiff's entitlement to fees under the EAJA. Or. Natural Res. Council v. Madigan, 980 F.2d 1330, 1332 (9th Cir. 1992); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 609 (2001) ("[a] request for attorney's fees should not result in a second major litigation"). Because the BLM does not provide any additional reasons why its position was substantially justified, it failed to meet its burden.[2] Therefore, the only remaining issues pertain to the appropriate amount of attorney fees and costs.

## II.  Attorney Fees

Under the EAJA, the "court's award of attorney fees must be 'reasonable.'" Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Citizens for Better Forestry v. U.S. Dep't of Agric., 2006 WL 5692819, *3 (N.D.Cal. Nov. 3, 2006) ("[t]his is commonly known as the lodestar"). The party seeking fees bears the burden of establishing its entitlement

---

[2] In its surreply, the BLM objects to plaintiffs' use of the parties' settlement negotiations to establish that substantial justification was lacking and, accordingly, requests that "[t]he statements in Plaintiffs' brief and in the Second Declaration of Mr. Cady . . . be stricken." Def.'s Surreply to Mot. Att'y Fees 1-3 (citing Fed. R. Evid. 408); but see Pls.' Resp. to Surreply to Mot. Att'y Fees 1 ("Rule 408 does not apply"). As discussed above, however, the Court did not rely on the parties' settlement negotiations in deciding this issue, such that the BLM's request is denied as moot. See Or. Natural Desert Ass'n v. Sabo, 854 F.Supp.2d 889, 925 (D.Or. 2012).

Page 8 - OPINION AND ORDER

to such a reasonable award. <u>Hensley</u>, 461 U.S. at 437. In granting a fee petition in whole or in part, "[c]ourts need not attempt to portray the discretionary analyses that lead to their numerical conclusions as elaborate mathematical equations, but they must provide sufficient insight into their exercises of discretion to enable us to discharge our reviewing function." <u>Sorenson</u>, 239 F.3d at 1145 (citation and internal quotations omitted).

A.   <u>Hours Expended</u>

Plaintiffs request an award of fees for 472.15 hours of work undertaken by five attorneys. In particular, plaintiffs seek compensation for the following hours: 333.8 for Cady, 94.5 for Frost, 41.1 for Mellgren, 2.0 for David Bahr, and .75 for William Sherlock.

The BLM argues that the claim on which plaintiffs prevailed was distinct and separate from their other, unsuccessful claims, such that any award should reflect only those fees that were incurred with respect to the successful claim. Even if the Court finds the successful claim interrelated to plaintiffs' other claims, the BLM contends that the fees should be apportioned in accordance with the limited success obtained. Similarly, the BLM objects to fees associated with a temporary restraining order/preliminary injunction motion that was never filed, clerical tasks, expert declarations filed in support of their petition, and "multiple emails in one time entry." Def.'s Resp. to Mot. Att'y Fees 10.

i.    Distinctness of Successful Claim

"Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley, 461 U.S. at 440.  On the other hand, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded." Id.; see also Sorenson, 239 F.3d at 1147.  "[C]laims are unrelated when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy, 305 F.3d 943, 956 (9th Cir. 2002) (citation and internal quotations omitted).  As such, "the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 903 (9th Cir. 1995); see also Hensley, 461 U.S. at 434-35.

In the underlying litigation, plaintiffs' unsuccessful FLPMA claim was premised on whether the Overlook Project fell within the Pechman Exemption to the Survey and Manage Standards and Guidelines, which generally require pre-disturbance surveys and a minimum ten-acre buffer around known vole sites. See, e.g., Compl. ¶ 32 ("the BLM did not survey for red tree voles within stands over 80 years in age prior to the decision" and "did not buffer known red tree vole sites" in violation of the FLPMA); Pls.' Mem. in

Supp. of Mot. Summ. J. 10 (characterizing the central issue pursuant to the FLPMA as "whether the logging proposed for the units qualifies under the exemption from [Survey and Manage Standards and Guidelines] as a thinning project in stands younger than 80 years"). Specifically, plaintiffs argued that the BLM's methods for measuring stand age and for drawing stand boundaries were arbitrary and capricious. See Pls.' Mem. in Supp. of Mot. Summ. J. 10-12. Had plaintiffs prevailed on their FLPMA claim, far reaching ramifications would have been achieved: the scope of the Pechman Exemption would have been redefined and, as a result, the BLM would have had to abandon the Overlook Project. Accordingly, the Court's decision focused on the language of the Pechman Exemption and whether it was intended to apply to mixed-aged stands. See Cascadia, 2012 WL 6738275 at *2-6.

Plaintiffs' successful NEPA claim challenged the BLM's failure to supplement the 2010 EA with post-decisional information concerning the red tree vole, as outlined in the FWS's Finding. See Compl. ¶ 36 ("[t]here are significant new circumstances or information relevant to the environmental impacts of the North Fork Overlook timber sale, including but not limited to, the proposed listing of the North Oregon Coast population of the red tree vole and finding that this population is threatened with extinction"); Pls.' Mem. in Supp. of Mot. Summ. J. 16-17 ("FWS's finding that listing the North Oregon Coast population of the red tree vole under the ESA is warranted but precluded is significant new information that the BLM was required to evaluate in a supplemental

analysis"). However, because this claim was premised on a procedural inadequacy, obtaining a favorable outcome did not necessarily result in a different substantive result or, in the least, significant modification to the 2010 EA. See Citizens, 2006 WL 5692819 at *9 ("NEPA does not contain substantive environmental standards and guidelines, nor does the Act mandate that agencies achieve particular substantive environmental results") (citation and internal quotations omitted). Therefore, while the Court acknowledges that plaintiffs' FLPMA claim was part of their broader attack on the BLM's "planning, authorization, and administration of this timber sale," it was nonetheless legally, factually, and temporally distinct from plaintiffs' successful NEPA claim. Pls.' Reply to Mot. Att'y Fees 2; see also Citizens, 2006 WL 5692819 at *8-9.

Whether plaintiffs' two NEPA claims are separate and distinct is a closer question. Plaintiffs' unsuccessful NEPA claim pertains to whether the 2010 EA sufficiently analyzed the Overlook Project's effects on the red tree vole. See, e.g., Compl. ¶ 34 ("none of the effects on the species, and loss of the species' habitat, is disclosed or analyzed in the Alsea EA"); Pls.' Mem. in Supp. of Mot. Summ. J. 13-15 ("[t]he record does not support the assumption that the project will not appreciably affect voles on the grounds that they are healthy at the watershed level"); see also Cascadia, 2012 WL 6738275 at *7-8 (analysis of unsuccessful NEPA claim focusing on pre-2010 information concerning the vole and whether it reasonably supported the BLM's conclusions). In other words,

plaintiffs' unsuccessful NEPA claim centered on the reasonableness of the BLM's evaluation of evidence that existed before the authorization of the Overlook Project, whereas plaintiffs' successful NEPA claim focused on the reasonableness of the BLM's failure to analyze new evidence that emerged five months after the 2010 EA. Nevertheless, the relief sought pursuant these claims was identical; both furthered plaintiffs' larger goal of preventing the BLM from going forward with the challenged timber sale until it reconsidered and, if necessary, could supplement and reissue a decision regarding the Overlook Project's impacts on the red tree vole. Under these circumstances, the Court cannot conclude that plaintiffs' unsuccessful NEPA claim is separate and distinct from their successful NEPA claim.

While the BLM is correct that plaintiffs "cannot recover fees for both NEPA claims just because they plead [them] under the same statute," because the relief sought on the unsuccessful claim was intended to remedy the same allegedly wrongful course of conduct as the successful claim - i.e. the failure to meaningfully consider and analyze relevant information about the vole - the Court finds that fees arising out of plaintiffs' unsuccessful NEPA claim are recoverable. Def.'s Resp. to Mot. Att'y Fees 5; see also Schwarz, 73 F.3d at 903. This is especially appropriate in light of the fact that plaintiffs' billing entries make clear that they conflated their litigation strategy concerning NEPA, making it is difficult to separate out the two on a claim-by-claim basis. See generally Revised Frost Decl. Ex. A; Revised Cady Decl. Ex. A;

Page 13 - OPINION AND ORDER

Mellgren Decl. Ex. A; see also Hensley, 461 U.S. at 435 (claims are related if "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis").

Accordingly, plaintiffs' fees that are clearly attributable to their FLPMA claim are stricken, resulting in a reduction of 7.0 hours from Frost's and 44.3 hours from Cady's revised fee petitions.[3]   See Revised Frost Decl. Ex. A (portions of 7/19/12, 7/24/12, 8/9/12, 9/7/12, 9/20/12, and 9/24/12 entries); Revised Cady Decl. Ex. A (entries from 12/5/11, 12/6/11, 12/7/11, 12/8/11, 12/12/11, 12/20/11, 12/21/11, 12/22/11, 12/26/11, 1/4/12, 1/5/12, 1/16/12, 1/17/12, 3/26/12, 4/9/12, 7/23/12, 7/26/12, 7/27/12, 8/8/12, 8/9/12, 9/9/12, 9/10/12, 9/13/12, 9/14/12, 9/16/12, 9/20/12, 9/21/12, and 9/22/12).

### ii. Success Obtained

The extent of a plaintiff's success is "the most critical factor" in determining the proper amount of attorney fees under the EAJA. Hensley, 461 U.S. at 436.   Thus, "'[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.'"   Sorenson, 239 F.3d at 1145 (quoting Hensley, 461 U.S. at 435).   Conversely, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly

---

[3] The BLM contends that 44.8 hours of Cady's fee petition are attributable to the FLMPA claim; the Court agrees but instead deducted .5 of these hours due to their clerical nature.   See Def.'s Resp. to Mot. Att'y Fees Ex. A.

rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. Thus, the dispositive inquiry concerns "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 434-35.

Considering the degree of success as the most relevant and critical factor, the Court cannot find that plaintiffs are entitled to the full amount of fees sought. Plaintiffs prevailed on only one of three claims and obtained modest relief. Hensley, 461 U.S. at 440 ("[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole"). As discussed above, plaintiffs' FLPMA claim sought to reformulate the Pechman Exemption so that it would only apply to even-age stands younger than 80 years old, which could "potentially [effect] all other similar projects [under] the Northwest Forest Plan." Def.'s Resp. to Mot. Att'y Fees 6-7. Likewise, concerning their unsuccessful NEPA claim, plaintiffs requested that the BLM be required to reconsider and significantly revise the 2010 EA because their conclusions allegedly were contravened by the evidence of record. However, the Court granted summary judgment in favor of the BLM and Freres as to both of these issues. See Cascadia, 2012 WL 6738275 at *3-8. The only claim on which plaintiffs' prevailed resulted in limited relief; the BLM was enjoined from commencing the Overlook Project until it considered the FWS's Finding and, if necessary, supplemented its existing NEPA

analysis. <u>Id.</u> at *9-12.

Based on this Court's holding, the BLM could have merely examined the significant new information, found that it did not impact its NEPA analysis or only required slight revisions, and then elected to go forward with the Overlook Project based on a substantively similar EA. Thus, although plaintiffs "obtained in relief almost all of what they sought" through settlement negotiations, the fact remains that this Court's holding did not significantly effect the status of the proposed project. Pls.' Mem. in Supp. of Mot. Att'y Fees 9. Nevertheless, given that the parties were previously unable to resolve this matter, the Court recognizes that plaintiffs would likely would not have achieved such relief via settlement had they not prevailed on their NEPA claim pertaining to the FWS's Finding on summary judgment. <u>See Ingram v. Oroudjian</u>, 647 F.3d 925, 927 (9th Cir. 2011) ("settlement negotiations may be considered by the district court as a factor in determining a fee award").

Given the scope of the relief sought by plaintiffs, the Court's ruling that the BLM violated NEPA by neglecting to evaluate new information, and subsequent order to prepare a supplemental EA, was not such an "excellent result" to support an award of fees totaling nearly $100,000. <u>See Or. Natural Desert Ass'n v. McDaniel</u>, 2011 WL 4625715, *3 (D.Or. Sept. 30, 2011) (remand to the agency for "a more comprehensive transportation plan . . . without vacatur or further injunctive relief" was not an "excellent result" under <u>Hensley</u>, warranting a %50 reduction in attorney fees).

Nonetheless, considering plaintiffs' limited success at the summary judgment stage in conjunction with their fruitful settlement negotiations, the Court finds a 15% reduction in the total amount of compensable hours is proper.[4]   This results in the following deductions: 12.8 hours of Frost's time, 42.5 hours of Cady's time, and 6.2 hours of Mellgren's time.   See generally Revised Frost Decl. Ex. A; Revised Cady Decl. Ex. A; Mellgren Decl. Ex. A.

   iii. Reasonableness

   Lastly, fees may be reduced for clerical tasks or for "expenses that appear 'excessive, redundant or otherwise unnecessary' in light of the tasks performed." See McDaniel, 2011 WL 4625715 at *4 (quoting Hensley, 461 U.S. at 434); see also Sterling Savings Bank v. Sequoia Crossing, LLC, 2010 WL 3210855, *7 (D.Or. Aug. 11, 2010).

   Notably, charging experienced attorney rates merely for scheduling, filing motions, opening emails, or forwarding documents via email is not reasonable. See Def.'s Resp. to Mot. Att'y Fees 8-11; see also Sterling Savings, 2010 WL 3210855 at *7 ("[t]asks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents") (citation omitted).   Although drafting, reading, and

---

   [4] For the purposes of this calculation, the Court excludes the hours that plaintiffs voluntary deducted according to their billing judgment or that have not otherwise been stricken for being vague or clerical, or for arising from the FLMPA claim.

responding to emails can be a necessary part of successful litigation, here Cady's entries for such tasks are, at times, excessive, especially where they pertain to scheduling or status updates. For this reason, 6.4 hours are excluded from Cady's revised fee petition.[5] See Revised Cady Decl. Ex. A (entries from 12/7/11, 12/8/11, 12/12/11, 12/21/11, 1/4/12, 2/13/12, 2/24/12, 4/26/12, 7/31/12, 8/9/12, 8/10/12, 10/15/12, 11/12/12, 11/27/12, 1/29/13, 1/31/13, 3/19/13, 6/8/13, 7/8/13, and 7/22/13).

The Court also deducts from plaintiffs' fee award those tasks that lack any explanation regarding their purpose or whose subject matter cannot be reasonably inferred. See Old W. Fed. Credit Union v. Skillman, 2012 WL 4594256, *4 (D.Or. Sept. 6), adopted by 2012 WL 4590080 (D.Or. Oct. 1, 2012) ("[t]his District has specifically cautioned against . . . providing vague or otherwise inadequate descriptions of tasks because these practices greatly hinder the court's ability to assess the reasonableness of the time expended") (citation omitted); see also Whitworth v. Nat'l Enter. Sys., 2010 WL 1924505, *6-7 (D.Or. Apr. 21), adopted by 2010 WL 1923673 (D.Or. May 11, 2010). This results in an abatement of 2.0 hours from Frost's award. See Revised Frost Decl. Ex. A (portion of 11/28/12 entry).

In addition, although never filed, the hours spent preparing a motion for a temporary restraining order and/or preliminary

---

[5] This amount reflects time beyond the 6.2 hours that plaintiffs conceded were improperly billed in response to the BLM's opposition. See Pls.' Reply to Mot. Att'y Fees 5; see also Revised Cady Decl. Ex. A (deducting 6.2 hours identified by the BLM as arising from clerical tasks).

Page 18 - OPINION AND ORDER

injunction are reasonably related to plaintiffs' NEPA claims and are thus compensable.[6]  See Pls.' Reply to Mot. Att'y Fees 6 ("preparatory work on the merits and relief [should not be stricken, especially because the] BLM [initially] refused to agree to not award the project in the period before the Court could resolve whether the project was legal").  Finally, the Court declines to award fees incurred in the preparation of Sherlock's and Bahr's expert declarations, as these declarations are "neither necessary nor helpful," especially in light of the fact that the information contained therein is largely redundant of that already in the record. McDaniel, 2011 WL 4625715 at *4; compare generally Sherlock Decl. and Bahr Decl., with Frost Decl., Cady Decl., and Mellgren Decl.

The foregoing analysis results in the following total deductions from plaintiffs' fee petition: 21.8 hours of Frost's time, 93.2 hours of Cady's time, 6.2 hours of Mellgren's time, 2.0 hours of Bahr's time, and .75 hours of Sherlock's time.

    B.  Hourly Rates

Plaintiffs seek the following hourly rates: $350 for Frost's 2012 work and $370 for his work in 2013; $200 for Cady's work in 2011 and 2012, and $210 for his 2013 work; and $200 for Mellgren. See Frost Decl. Ex. A; Cady Decl. Ex. A; Mellgren Decl. Ex. A.

The EAJA provides that attorney fees shall not be awarded in

---

[6] Further, the Court notes that the BLM addressed this argument solely in a footnote.  See Def.'s Resp. to Mot. Att'y Fees 11 n.4; see also Rambus Inc. v. Hynix Semiconductor Inc., 569 F.Supp.2d 946, 985 (N.D.Cal. 2008) (the court need not consider "substantive arguments raised only in a footnote").

excess of $125 per hour, adjusted for inflation. See Pierce, 487
U.S. at 571 (citation and internal quotations omitted).[7] However,
"[e]nhanced hourly rates based on the special factor of the limited
availability of qualified attorneys for the proceedings involved
may be awarded under EAJA where the attorneys possess distinctive
knowledge and specialized skill that was needful to the litigation
in question and not available elsewhere at the statutory rate."
Nadarajah v. Holder, 569 F.3d 906, 912 (9th Cir. 2009) (citation
and internal quotation omitted); see also Pierce, 487 U.S. at 572-
73 (an increased rate may be available due to special factors,
which cannot be "of broad and general application" and, as such, do
not include the "novelty and difficulty of issues, the
undesirability of the case, the work and ability of counsel[,] the
results obtained[,] [or] local or national market [rates]"); Love
v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991).

    Here, Frost is a graduate of Stanford University and the
University of Oregon School of Law, with over 20 years of
environmental litigation experience, most recently with the Western
Environmental Law center in Eugene, Oregon, a nonprofit public
interest law firm. See Frost Decl. ¶¶ 1-3. He also served as an
adjunct professor at Lewis and Clark Law School for three years,
where he taught an environmental law course; he currently

---

    [7] Adjusted for inflation, statutory fees are as follows
under the EAJA: $180.59 per hour for 2011, $184.32 per hour for
2012, and $186.55 per hour for the first half of 2013. See
United States Court for the Ninth Circuit, "Statutory Maximum
Rates Under the Equal Access to Justice Act," available at
http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039.

supervises the Environmental Law Clinic at the University of Oregon School of Law. Id. at ¶ 2. Moreover, Frost participated, via authoring publications or teaching, in several CLE courses on federal environmental law. Id. at ¶ 4.

Both Cady and Mellgren graduated from the University of Oregon School of Law in 2011 and, while in law school, focused on environmental law and obtained a significant amount of clinical or research experience therein. See Cady Decl. Decl. ¶¶ 1-2; Mellgren Decl. ¶¶ 1-3. After graduating, Cady became employed at Cascadia Wildlands and Mellgren began working at the Western Environmental Law Clinic. Cady Decl. Decl. ¶¶ 2-3; Mellgren Decl. ¶¶ 4-5. All three attorneys indicate that they each individually retain a distinctive knowledge and specialized skill in environmental law that was necessary to the underlying litigation and not otherwise available at the statutory EAJA rate. See Frost Decl. ¶ 7; Cady Decl. ¶ 6; Mellgren Decl. ¶¶ 5, 7; see also Laughlin Decl. ¶¶ 2-3; Heiken Decl. ¶ 2; Wilson Decl. ¶ 2.

Yet, as the BLM observes, "[p]laintiffs filed the complaint in this case within three months of [Cady and Mellgren] being admitted to practice law in Oregon." Def.'s Resp. to Mot. Att'y Fees 12-13. Given Cady's and Mellgren's limited durations as practicing attorneys, the Court cannot conclude that either demonstrated sufficient experience litigating cases of this type to qualify for any enhancement above the EAJA statutory cap. In other words, it is questionable if Cady and Mellgren possessed distinctive skills that were critical to the litigation at issue. See Love, 924 F.2d

at 1496 ("the attorney must possess distinctive knowledge and skills developed through a practice specialty [and] those distinctive skills must be needed in the litigation"). Nonetheless, because both Cady and Mellgren concentrated on environmental law during law school, and earned accomplishments and accolades for such work, they each evinced at least some specialized knowledge of this area of law. Accordingly, Cady and Mellgren are awarded fees at $180 per hour, which is at the upper end of the statutory EAJA rate for the time-frame in question.

On the other hand, with over two decades of environmental practice, Frost has evinced adequate experience litigating in this area of law to justify an enhanced fee. In fact, the BLM implicitly acknowledges this fact. See Def.'s Resp. to Mot. Att'y Fees 13 ("Mr. Frost has many years of experience [and] should be awarded an hourly rate of no more than $325/hr in 2012 and $335/hour in 2013"). Additionally, plaintiffs' declarations establish that qualified attorneys such as Frost, whose distinctive skills and knowledge were needed to prevail, were unavailable at the statutory EAJA rate. Therefore, the Court finds $350 per hour to be a reasonable rate for all of Frost's work. In so deciding, the Court recognizes Frost's request for a rate increase for work performed in 2013; nevertheless, because the parties' cross-motions for summary judgment were decided in December 2012, the majority of Frost's work from 2013 inheres to the present motion, such that no further fee escalation is justified.

In sum, 72.7 hours of Frost's time is awarded at $350 per hour

($25,445 total), 240.6 hours of Cady's time is awarded at $180 per hour ($43,308 total), and 34.9 hours of Mellgren's time is awarded at $180 per hour ($6,282 total). Based on these calculations, the Court finds a total attorney fee award of $75,035 to be appropriate.

III. Costs

Plaintiffs seek to recover $1,042.05 in costs; this amount includes filing fees, postage, a research fee, photocopies, travel/meals, and in-house printing. See Frost Decl. Ex. B. Costs are typically awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. See Fed. R. Civ. R. 54(d); see also 28 U.S.C. § 2412. The expenses which may be taxed as costs are enumerated in 28 U.S.C. § 1920 and generally include any reasonable "out-of-pocket expenses . . . 'that would normally be charged to a fee paying client.'" Nat'l Warranty Ins. Co. v. Greenfield, 2001 WL 34045734, *9 (D.Or. Feb. 8, 2001) (quoting Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)); see also 28 U.S.C. § 2412(a)(1).

The BLM does not challenge plaintiffs' bill of costs. See Def.'s Resp. to Mot. Att'y Fees 1, 15. Further, the Court finds that the requested costs all fall within the purview of 28 U.S.C. § 1920 and appear within plaintiffs' billing statements. Therefore, plaintiffs' motion is granted in this regard.

## CONCLUSION

Plaintiffs' motion for EAJA attorney fees and costs (doc. 50) is GRANTED in part. Accordingly, plaintiffs are awarded a total of

$76,077.05 in attorney fees, costs, and other expenses.

IT IS SO ORDERED.

Dated this 12th of December 2013.

_____
Ann Aiken
United States District Judge